**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| MICHAEL BRANDON BOVENZI, | ) | CASE NO. 1:20-CV-00185-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Michael Brandon Bovenzi ("Bovenzi" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Plaintiff's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On April 18, 2017, Claimant filed an application for SSI, alleging a disability onset date of March 4, 2007 and claiming he was disabled due to ADHD, depression, mood disorder, anxiety, psychosis, obesity, learning disorder, and hyperhidrosis. (ECF No. 9 at 201). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 9 at 111). On January 9, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 9 at 33-50). On March 6, 2019, the ALJ issued a written decision finding Claimant was not

1

disabled.  (ECF No. 9 at 15).  The ALJ's decision became final on December 4, 2019, when the

Appeals Council declined further review.  (ECF No. 9 at 4).

On January 28, 2020, Claimant filed his Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11, 13, 14).

Claimant asserts the following assignments of error:

1.  The ALJ erred when she failed to properly evaluate the evidence and
be persuaded by the opinions of the treating and examining sources.

2.  The ALJ's determination regarding credibility was erroneous and
was not supported by substantial evidence in violation of Social
Security Ruling 16-3p.

3.  The ALJ erred when she did not meet her burden at Step Five of the
Sequential Evaluation.

(ECF No. 11 at 1).

## III. Background

### A. Personal and Vocational Information

Claimant was born on March 4, 1988, which means he was a younger individual at all

relevant times during this proceeding. (ECF No. 9 at 28). He was considered to have at least a high

school education. (ECF No. 9 at 28). He had no past relevant work experience. (ECF No. 9 at 28).

However, during the period of disability, Claimant held two jobs: one in 2006 and another in 2010,

each for a short period of time. (ECF No. 9 at 154). Claimant stated he stopped working due to

issues related to his alleged impairments. (ECF No. 9 at 201). Claimant began using OxyContin at

age 18 (2006) and used heroin and cocaine from age 19 (2007) to age 25 (2013). (ECF No. 9 at

340).

### B. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Plaintiff's hearing:

At the hearing, the claimant testified that he is unable to work

because he has problems sitting still, speaking with people, and
controlling his anger. He testified that he has problems with
instruction and has no ambition to do things. The claimant stated
that he walked out on one of his past jobs after one day because he
had a panic attack. He is receiving mental health treatment,
including seeing a physician, group therapy and medication (hearing
testimony). For these reasons, the claimant contends that he is
unable to meet the demands of competitive employment on a regular
and continuous basis.

(ECF No. 9 at 23; *see also* ECF No. 9 at 20, 21). Additionally, the ALJ noted that Claimant testified

that he lives with his mother and brother and has a hard time doing chores (ECF No. 9 at 21), and

that he had a few jobs that never lasted more than a day or two (ECF No. 9 at 24).

The ALJ posed the following hypothetical to the vocational expert:

assume an individual who has no exertional limitations. However,
as far as mental limitations are concerned, this individual is limited
to simple, routine-type work; can interact with others to speak,
signal, ask questions and serve; should avoid jobs that require
mechanized, fast-paced production demand for time and quantity;
should avoid, and even though this is typically something that is
given in a physical context, I'm putting in the mental context, should
avoid jobs that require the worker to operate dangerous moving
equipment such as power saws, jackhammers, no work in
unprotected heights, and this is for safety purposes.

(ECF No. 9 at 47). The vocational expert testified that there would be three jobs available for such

an individual. (ECF No. 9 at 47-48). The ALJ summarized those jobs in her decision:

1.      Laundry Worker (DOT #361.684-014), which is generally
performed at the medium exertional level with an SVP of 2
(unskilled), with approximately 270,000 positions in the national
economy.

2.      Cleaner (DOT #381-687-018), which is generally performed
at the medium exertional level with an SVP of 2 (unskilled), with
approximately 530,000 jobs in the national economy.

3.      Garment Sorter (DOT #222.687-014), which is generally
performed at the light exertional level with an SVP of 2 (unskilled),
with approximately 111,000 jobs in the national economy.

(ECF No. 9 at 47). The ALJ posed two additional hypotheticals, which will be discussed later in this Report. The ALJ ultimately concluded that the first hypothetical adequately represented Claimant's limitations and abilities. Based on the testimony of the vocational expert, the ALJ concluded that, considering Claimant's age, education, work experience, and RFC, Claimant is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and determined that he was not disabled under the regulations. (ECF No. 9 at 29).

C.  **Relevant Medical Evidence**

The ALJ also summarized Claimant's health records and symptoms:

> Review of the medical record shows that the claimant was diagnosed with attention deficit disorder (ADD) as a child, had a drug abuse problem that required rehabilitation, and depression (lF). Education records indicate the claimant had a full scale IQ of 112 as a child even though he had been diagnosed with mild ADD (lE; 2E). Evidence shows that the claimant has been participating in therapy for a number of years (2F). Treatment notes from April 2017 indicates the claimant's mood was unstable (2F/34). However, Pharmaceutical management notes from July 2017 show that the claimant was stable on his Adderall, Celexa and Gabapentin medications and he was not experiencing any symptoms of mania (4F/43).

> On August 2, 2017, the claimant underwent an evaluation with consultative examiner Janis Woodworth, Ph.D. (3F/1). The claimant reported a long history of criminal problems and substance abuse (3F/3-4). He reported having low motivation, low energy, difficult time concentrating and paying attention, poor memory and suffers from panic attacks (3F/4-5). However, cognitive function testing shows that the claimant was able to recall 3 out of 3 objects after a brief delay, his attention and concentration were intact, and he could perform serial 3s and 7s (3F/6). Dr. Woodworth assessed the claimant has having major depressive disorder, substance abuse disorders in remission, and ADHD (3F/7).

> Therapy notes from the same month as the consultative examination indicates the claimant reporting difficulty managing his anxiety while attending 12-step meetings (4F/18). He also complained of difficulty communicating and frustration with being forced to go to

4

meetings (4F/18). Opiate maintenance therapy notes show that the claimant did poorly in group settings and was recommended for individual therapy only (4F/48).

Therapy notes from Autumn 2017 indicate that the claimant reporting problems with concentration and attention. He also reported feeling depressed and anxious (4F; 6F). However, pharmaceutical management records show that the claimant's mood was euthymic and he reported he was doing well (4F/33, 55). In December 2017, the claimant reported no problems with ongoing sobriety and did not identify any "threats to sobriety." He presented on time and was "actively engaged in session." He "processed family dynamics and identified how they affect present relationships and interpersonal interactions." (6F/l 7) The claimant was documented as making "significant progress" as he continued to maintain his sobriety and take his medications as prescribed. (Ex. 6F/ 20)

On January 16, 2018, he reported to Dr. Ramirez his mood had been "stable" and he had not [sic] cravings. (Ex. 6F/ 81) On January 23, 2018, the claimant arrived early for his counseling appointment and was "actively engaged in session." He was alert, oriented x4 and speech was normal. He made good eye contact, and his hygiene was fair because his hair appeared greasy. He reported that he has felt depressed lately "as usual," but denied any suicidal ideation, plan or intent. Claimant reported he felt "bored" and isolated most of the time, and he spent most of his days sleeping and playing video games. After discussing with the counselor his love for playing basketball as a youth, he reported that he would have to get in much better shape to be able to play like he wants to. Hence, he contemplated "trying to get back in shape again." (Ex. 6F/ 24)

On February 7, 2018, claimant presented on time for his appointment and was "actively engaged in session." He reported no sobriety threatening issues and he was to follow up with maintenance facilitator D. Adkins to determine how long he needs to remain in phase one of maintenance program. The claimant reported he still feels depressed and "most of his depression is 'environmental,' because he does not leave his room all day.  He denied suicidal ideation, plan or intent. (Ex. 6F/31) However,   a few days later, on February 13, 2018, he told Dr. Ramirez his "mood has been stable," and he "is doing well." (Ex. 6F/ 88)

Similarly, the following month's visit with the same therapist, the claimant arrived early and was "actively involved in session." He presented with full range affect, was alert and oriented x4, his speech was normal and he made good eye contact. His dress/hygiene were appropriate for the setting. He was pleasant and personable and

reported no sobriety threatening issues and no cravings at this time. (Ex. 6F/ 37) On March 13, 2018, Claimant told Dr. Ramirez his depressive symptoms were "off and on," he slept "at times a lot and has a lack of motivation." (Ex. 6F/ 95)

On April 10, 2018, claimant arrived early to session and was "cooperative and engaged." His dress/hygiene were fair, and appropriate for setting. Although he was alert and oriented x4, he presented with dysthymic mood/affect, which appeared to the therapist, to be his baseline.

Although he maintained sobriety, he stated he did not attend meetings and reported that his Suboxone prescriber is aware and has excused him from meetings due to his length of sobriety. The claimant "was more open today in session, and discussed hx of abusive relationship with ex- girlfriend, who is the mother of two of his children." The therapist processed with claimant the fact he was going to get a new counselor. (Ex. 6F/45)

He did admit that he stopped taking his Gabapentin medication, as it made him feel tired (6F/66). The claimant's physician changed his medications to better address his symptoms (6F/66).

Pharmacologic management treatment notes were sparse. Typically, Dr. Ramirez provided only basic information with slight variation depending on claimant's report of symptom: "29 years old, white male suffering an Opioid addiction and ADHD. Patient reports adherence to treatment. Patient is on suboxone program. Patient continues to report depression. No suicidal ideation He denies cravings. Plan: Continue Suboxone program." (Ex. 6F/ 73) Therapy and opioid addiction treatment records from Spring 2018 show that the claimant was doing well and his mood was stable at times and depressed at others (6F). Dr. Ramirez noted in May 2018, the claimant reported "doing well," his mood was stable and he denied cravings. The claimant wanted to continue therapy to "discuss personal growth problems." Risk assessment was "none." (Ex. 6F/ 109-110)

Evidence from June 2018 show that the claimant's attention and concentration was "OK," mood depressed, and judgment limited (6F/l 13-114). The claimant also stated that his mood was stable but he felt lonely (6F/117). In August 2018, the claimant's judgment was noted to be poor but the following month he stated he was "doing OK" and his mood was stable  (6F/124, 142). In October 2018, the claimant's mood was euthymic, and he was doing well on his treatment program (8F/7, 11).

(ECF No. 9 at 24-26).

### D.  Opinion Evidence

#### 1.  State Agency Psychiatric Reviewing Psychologists

The ALJ summarized the opinions of the state agency psychiatric medical consultants

Courtney Zeune, Psy.D., and Jennifer Swain, Psy.D.:

> Both Dr. Zeune, on initial determination, and Dr. Swain, on reconsideration, opined that the claimant had moderate limitations in all four areas of mental functioning (1A; 3A). They both also opined [claimant] can understand, remember, and concentrate on 1 - 3 step tasks, but without demands for close sustained attention (1A; 3A). Finally, they opined that the claimant could work with a small group of coworkers on an occasional and superficial basis but should not work with the public (1A; 3A).

(ECF No. 9 at 26). The ALJ found Zuene's and Swain's opinions unpersuasive. She explained:

> First, they expressed their opinions using words that are vague and imprecise and did not attempt to define them or further clarify their use in the opinion statement For example, "without demands for close sustained attention." Next, the Dictionary of Occupational Titles does not define nor use the phrasing "l - 3 step" instructions. Another reason is they failed to explain or provide evidence to support the limitation that the claimant "should not work with the public." Finally, they failed to define, explain, provide details or quantify their restriction that claimant is limited to working with "small group of co- workers on an occasional and superficial basis[.]"

(ECF No. 9 at 26-27).

#### 2.  Janis Woodworth, Ph.D., Consultative Examiner - August 2, 2017

On August 2, 2017, Claimant was examined by consultative examiner, Janis Woodworth,

Ph.D. Woodworth assessed Claimant's attention and concentration as average, but opined that

Claimant may have more difficulty that others of similar age with understanding, remembering

and carrying out instructions, as well as maintaining persistence and pace, due to difficulty

focusing. (ECF No. 9 at 344). Woodworth also opined that Claimant would have difficulty

responding appropriately to supervision and work pressures due to severe anxiety. (ECF No. 9 at

345).

The ALJ was not persuaded by Woodworth's opinion, explaining that:

> it is not consistent with her findings used vague and imprecise
> terminology and did not adequately explain the limitations. She
> appeared to have relied solely on the claimant's subjective reports
> for drawing her conclusions. First, she said he "may have more
> difficulty than same age peers in understanding remembering and
> carrying out instructions due to anxiety and difficulty focusing."
> However, this is not consistent with her finding that his working
> memory for simple and complex tasks was average. At page 8 of her
> report, she stated recent and remote memory were intact because he
> was [able] to immediately recall 3 out of 3 objects as well as 3 out
> of 3 objects after a five minute delay. "Attention and concentration
> were intact." Her use of the phrase "may have difficulty" is also
> vague, imprecise and fails to quantify the extent of the difficulty.
> The statement that the difficulty is "due to anxiety and difficulty
> focusing" is conclusory in nature and does not identify any specific
> findings from her report to support. Second, in her examination
> findings, she stated the claimant was average regarding
> concentration. However, when stating limitations in her opinion, she
> appeared to have relied solely on the claimant's report of having
> "difficulty in maintaining focus when there are distractions." Hence,
> she stated" he may have more difficulty in maintaining persistence
> and pace and performing simple and multi step tasks compared to
> same age peers." Similar arguments regarding the use of vague and
> imprecise terminology is applicable for this criteria as well.
> Regarding the claimant's ability to respond appropriately to
> supervisors, she failed to provide an opinion. Instead, she repeated
> what the claimant said to her. Finally, with regard to responding to
> work pressures, she did not provide an appropriate opinion. She
> merely stated in a conclusory fashion, the "claimant has limitations."
> Additionally, Dr. Woodworth found that the claimant's reports of
> anxiety were vague but also imposed limitations on his ability to
> respond appropriately to work pressures due to severe anxiety (3F/5,
> 9).

(ECF No. 9 at 27).

### 3. Dr. Luis Ramirez - September 19, 2018

On September 19, 2018, Luis Ramirez, psychiatrist, completed a "mental impairment questionnaire." (ECF No. 9 at 427428). Ramirez opined that Claimant either had "limited but

8

satisfactory" ability or "seriously limited, but not precluded" ability in nearly every functional area. (ECF No. 9 at 427-428). He opined that Claimant's ability to sustain concentration and persistence was mostly seriously limited, but his ability to understand, remember and interact socially was limited but satisfactory. (ECF No. 9 at 427-428). Ramirez also opined that Claimant was unable to set realist goals, seriously limited in his ability to respond appropriately to changes in the work setting, and that he would be off-task 100% of any given workday. (ECF No. 9 at 428).

The ALJ was not persuaded by Ramirez's opinion. She explained that:

> the medical evidence of record shows that the claimant's attention and concentration were intact when formally examined by Dr. Woodworth (3F). Additionally, his opinion the claimant would be off-task 100% of a workday is rejected as an exaggeration because there is no support whatsoever in the Signature [Health] treatment notes or the cumulative evidence in the record. As noted above, the claimant's therapist documented the claimant would frequently come to appointments early or on time, would be "actively engaged in the session," would discuss his interpersonal relationships, and address coping skills. All of which indicates a measure of ability to concentrate, be on task and which negates Dr. Ramirez's opinion. (4F; 6F; 5F).

(ECF No. 9 at 27-28).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

2.      The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD); major depressive disorder; and generalized anxiety disorder (20 CFR 416.920(c)).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple routine type work; can interact with others to speak, signal, ask questions and serve; should avoid jobs that require mechanized fast paced production demands for time and quantity; should avoid jobs that require the worker to operate dangerous moving equipment, such as power saws and jack hammers; no work in unprotected areas, for safety purposes.

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since April 18, 2017, the date the application was filed (20 CFR 416.920(g)).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the

claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C.  Discussion

Plaintiff raises three issues on appeal: 1) whether the ALJ properly evaluate the evidence and opinions of the treating and examining sources; 2) whether the ALJ's credibility determination is supported by substantial evidence; and 3) whether the ALJ met her burden at step five of the sequential analysis.[1]

---

[1] Claimant also briefly argues that the ALJ committed reversible error because the administrative hearing lasted 21 minutes, during which the ALJ did not ask any questions of Claimant. (ECF No. 11 at 9-10). Because Claimant fails to adequately raise this issue on appeal and fails to address it in anything other than a perfunctory manner, the Court considers this argument waived. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").

### 1. Medical Opinions[2]

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 17, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a).  Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ...."). "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.,* No. 1:19-CV-02261-JDG, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (citation and internal quotation marks omitted).

---

[2] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

Claimant asserts that the ALJ erred in her findings regarding the persuasiveness of several of the medical opinions. Claimant also takes general issue with the ALJ's conclusion that Claimant was capable of performing substantial gainful activity, while finding no psychiatric opinion persuasive. (ECF No. 11 at 10).

As an initial matter, an ALJ's RFC finding need not to be based on a medical opinion in order to be grounded in substantial evidence. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Accordingly, Claimant's argument that the ALJ's decision is not supported by substantial evidence because she did not give persuasive weight to any medical source is without merit.[3]

The Court next reviews whether the ALJ properly explained how she evaluated each of the opinions of the medical sources.

### a.  State Agency Reviewing Psychologists

State Agency psychiatric medical consultants Zeune and Swain opined that Claimant had moderate limitations in all four areas of mental functioning. Both opined that Claimant is able to understand, remember, and concentrate on 1 - 3 step tasks, but without demands for close sustained attention. Finally, they both opined that Claimant could work with a small group of coworkers on

---

[3] To the extent Claimant argues that the ALJ erroneously relied on her own interpretation of the medical evidence (*see* ECF No. 14 at 1-2), the Court finds this argument waived as Claimant failed to adequately present it in his initial brief and further failed to actually identify the medical evidence that the ALJ supposedly interpreted on her own. *See McPherson*, 125 F.3d at 995-96; *Swain*, 379 F. App'x at 517-18 (failure to raise a claim in the merits brief constitutes waiver); *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) ("An argument first presented to the Court in a reply brief is waived.").

an occasional and superficial basis but should not work with the public. Claimant challenges the ALJ's finding that Zeune's and Swain's opinions were not persuasive. Specifically, the Claimant argues that "these consultants are highly qualified medical sources [pursuant to SSR 17-2p] who are also experts in the evaluation of medical issues of disability"; thus, the ALJ "committed harmful and reversible error when she disagreed with their conclusions and found their analysis not persuasive." (ECF No. 11 at 11). Claimant relies on only one of the relevant factors used in assessing prior administrative medical findings under 20 C.F.R. § 416.920c(c)(5) (The agency may consider "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements[.]"). However, there are four other relevant factors: supportability; consistency; relationship with the claimant; and specialization. 20 C.F.R. § 416.920c(c)(1)-(4). "The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ...." 20 C.F.R. § 416.920c(b)(2).

The ALJ adequately explained the opinions' supportability and consistency in her decision. The ALJ explained that she found their opinions not persuasive because Zeune and Swain:

- "expressed their opinions using words that are vague and imprecise and did not attempt to define them or further clarify their use in the opinion statement";

- "failed to explain or provide evidence to support the limitation that the claimant 'should not work with the public'"; and

- "failed to define, explain, provide details or quantify their restriction that claimant is limited to working with 'small group of co- workers on an occasional and superficial basis'".

(ECF No. 9 at 26-27). Claimant does not address these explanations in his initial brief or in his reply.[4]  Instead, he relies only on SSR 17-2p in support of his argument that ALJ was required to

_____

[4] Accordingly, Claimant waives any argument that the ALJ's explanation was insufficient pursuant to 20 C.F.R. § 416.920c(b)(2).

find Zeune's and Swain's opinions persuasive. (ECF No. 14 at 2).

Interestingly, Claimant fails to identify how the ALJ's decision ran afoul of SSR 17-2p. The ruling "provides guidance on how adjudicators at the hearings and Appeals Council (AC) levels of our administrative review process make findings about medical equivalence in disability claims under titles II and XVI of the Social Security Act (Act)." SSR 17-2p, 2017 WL 3928306. The ruling, which directly relates to the process of adjudicating whether an impairment is medically equivalent to a listing, states that state agency medical consultants "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act", but at no point does it indicate that such medical opinions are required to be given persuasive authority. SSR 17-2p. Accordingly, Claimant's issue has no merit.

### b. State Agency Consultant Janice Woodworth

The ALJ also found the opinion of the consultative examiner, Dr. Janis Woodworth not persuasive. Woodworth opined that Claimant may have more difficulty that others of similar age with understanding, remembering and carrying out instructions, as well as maintaining persistence and pace, due to difficulty focusing. (ECF No. 9 at 344). Woodworth also opined that Claimant would have difficulty responding appropriately to supervision and work pressures due to severe anxiety. (ECF No. 9 at 345).

Claimant's issue here is unclear. He argues that: "Dr. Woodworth completed a thorough examination (Tr. 335-342) and based her findings on her observations during the examination. The ALJ's summary dismissal of her opinion was not based on any evidence in the record but was rather her supposition and conclusion that the opinions were inconsistent. If the opinions were consistent, the ALJ would not have had a basis for her finding that Bovenzi was not disabled. Since she wanted to find that Bovenzi was not disabled, the opinions were not persuasive. This

constituted harmful error in this matter." (ECF No. 11 at 12). Claimant states nothing specific about the ALJ's explanation or how it is flawed. (*See* ECF No. 11). The Commissioner argues that Claimant's argument regarding Woodworth is undeveloped and non-specific and encourages the Court to find it waived. (ECF No. 13 at 16). In reply, Claimant argues that the ALJ ignored the medical evidence showing that during his examination with Woodworth, Claimant "exhibited rapid speech and had difficulty following a timeline for important events" and "appeared dysthymic and had a blunted affect[.]" (ECF No. 14 at 2).

The Court agrees with the Commissioner and finds that Claimant has waived his argument regarding Woodworth's opinion by failing to adequately address it in his initial brief. *See McPherson*, 125 F.3d at 995-96; *Swain*, 379 F. App'x at 517-18; *Abboud*, 438 F.3d at 589.[5]

### c. Ramirez

The ALJ also found the opinion of Claimant's treating psychiatrist, Dr. Luis Ramirez, not persuasive. Ramirez opined that Claimant either had "limited but satisfactory" ability or "seriously limited, but not precluded" ability in nearly every functional area. (ECF No. 9 at 427-428). He opined that Claimant's ability to sustain concentration and persistence was mostly seriously limited, but his ability to understand, remember and interact socially was limited but satisfactory. (ECF No. 9 at 427-428). Ramirez also opined that Claimant was unable to set realist goals, seriously limited in his ability to respond appropriately to changes in the work setting, and that he would be off-task 100% of any given workday. (ECF No. 9 at 428).

After summarizing Ramirez's opinion, the ALJ explained the basis for finding it unpersuasive. First, the ALJ addressed Ramirez's opinion in relation to the consistency of the

---

[5] Despite this waiver, the Court also notes that the ALJ did in fact provide a sufficient analysis to discount Dr. Woodworth's opinion by thoroughly addressing both the supportability and consistency of the opinion. (*See* ECF No. 9 at 27).

medical record. She found Ramirez's opinion that Claimant's attention and concentration were seriously limited (but not precluded) to be inconsistent with the medical evidence showing that his attention and concentration were intact.[6] (ECF No. 9 at 27, 342). The ALJ also explained that Ramirez's opinion was inconsistent with the record as to Claimant's ability to concentrate and be on task in that "the claimant's therapist documented the claimant would frequently come to appointments early or on time, would be 'actively engaged in the session,' would discuss his interpersonal relationships, and address coping skills." (ECF No. 9 at 28 (citing progress notes and treatment records from Ramirez's practice)). Additionally, the ALJ addressed the supportability of Ramirez's opinion that Claimant would be off-task 100% of a workday. The ALJ explained that "there is no support whatsoever in the Signature [Health] treatment notes or the cumulative evidence in the record." (ECF No. 9 at 28). Accordingly, the ALJ adequately explained Ramirez's opinion's supportability and consistency in her decision.

Claimant takes issue with additional limitations that were not addressed by the ALJ in her explanation, such as Ramirez's opinion that "due to Bovenzi's depression and problems with concentration, he would be seriously limited performing the following work activities: carry out detailed instructions, maintain attention and concentration for extended periods, manage regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, understand and remember detailed instructions, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond

---

[6] Claimant asserts that this finding is "contrary to the evidence in the record along with [his] testimony at the hearing" but provides no specifics or record citations to support his assertion. (*See* ECF No. 11 at 12).

appropriately to changes in the work setting. In addition, he would be unable to set realistic goals or make plans independently of others." (ECF No. 11 at 12-13 (citing ECF No. 9 at 427-428)). However, the ALJ addressed these limitations, albeit not independently. The worksheet upon which Ramirez's opinion is located includes a checkbox with labeled sections: "Sustained Concentration and Persistence Limitations"; "Understanding and Memory Limitations"; "Social Interaction Limitations; and "Adaptation Limitations". (ECF No. 9 at 427-428). Within each of the sections, there is a list of further specific limitations; this is the list referenced by Claimant above. However, the ALJ addressed the general section headers, and, when necessary, the more specific limitations. Accordingly, the Claimant's assertion that the ALJ ignored these limitations is without merit.

Moreover, an ALJ is not required to recite every limitation in an opinion, especially when the ALJ found the entire opinion to be not persuasive. *See Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *9 (N.D. Ohio Feb. 21, 2019) ("there is no requirement that the ALJ discuss all the evidence, or more specifically, every limitation considered by [a doctor]"); *Purrty v. Comm'r of Soc. Sec.*, No. 1:13 CV 1204, 2014 WL 3510991, at *9 (N.D. Ohio Jul. 10, 2014). Here, the ALJ adequately explained why she found the entire opinion to be not persuasive and her conclusion is supported by substantial evidence. (ECF No. 9 at 27-28).

### 2. Substantial evidence supports the decision of the ALJ to find Claimant's allegations of his limitations less than fully credible.

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the

18

record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304. Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), report and recommendation adopted by 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Claimant states that "the ALJ did not properly evaluate the medical evidence and make a defensible determination as to whether Bovenzi's testimony was credible." (ECF No. 11 at 18). Here, the ALJ failed to discuss the intensity, persistence, and limiting effects of Claimant's symptoms in her unified statement regarding Claimant's subjective complaints. However, as discussed below, the ALJ's error was harmless.

The ALJ specified Claimant's subjective complaints:

> In his application for benefits, the claimant indicated that multiple conditions limit his ability to work, including ADHD, major depressive disorder, unspecified episodic mood disorder, generalized anxiety disorder, psychosis, obesity, learning disorder and hyperhidrosis (3E/2). At the hearing, the claimant testified that he is unable to work because he has problems sitting still, speaking with people, and controlling his anger. He testified that he has problems with instruction and has no ambition to do things. The claimant stated that he walked out on one of his past jobs after one day because he had a panic attack. He is receiving mental health treatment, including seeing a physician, group therapy and medication (hearing testimony).

(ECF No. 9 at 23). Next, the ALJ provided a unified statement of reasons for discounting credibility:

> An RFC is the maximum a person can perform. SSA policy and the regulations do not expect a person to work entirely free of symptoms. The question is whether the symptoms cause limitations that preclude a person from working. In this case, the claimant testified that he is fidgety, unmotivated, cannot follow instructions and cannot do anything. These self described symptoms do not rise to the level of precluding the claimant from working at an unskilled job within the limits of the RFC stated above. He also testified he had a few jobs that never lasted more than a day or two inferring this was evidence to support the severity of his symptoms. The claimant's work history indicates the claimant had only two jobs in the last fifteen years. One in 2006 earing $238, and a second in 2010 earing $140. Given his reported history that he began abusing oxycontin at the age of 18 and has been sober the last five years, it is likely he was abusing opioids while he worked at these two jobs which likely contributed to his short employment period.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(ECF No. 9 at 23-24). The ALJ's explanation is not sufficient here. Of the factors to be considered

– daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms – the ALJ's explanation only mentions the "any other factors" category. Despite listing Claimant's numerous subjective complaints in the paragraph preceding the explanation, the ALJ failed to address them. The ALJ refers only to Claimant's limited work history and speculates that his inability to work was related to Claimant's drug abuse, rather than his impairments.[7]

However, the ALJ's error was harmless. "[H]armless error analysis applies to credibility determinations in the social security context." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Here, the ALJ adequately discussed Claimant's subjective complaints elsewhere in her decision. *See Mace v. Comm'r of Soc. Sec.*, No. 1:19CV1502, 2020 WL 7040592, at *4 (N.D. Ohio Nov. 30, 2020); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

The ALJ discussed Claimant's mental impairments and symptoms at length. (*See* ECF No. 9 at 24-26). For example, the ALJ noted that despite Claimant's reports of feeling depressed and anxious, pharmaceutical management records show that the Claimant's mood was "euthymic and he reported he was doing well (4F/33, 55)." (ECF No. 9 at 24). The ALJ also pointed out Claimant's own statements of improvement, progress, and stability. (ECF No. 9 at 24-25).

---

[7] The Court notes that the ALJ's statement is consistent with the evidence. Claimant began using Oxycontin at age 18 and used heroin and cocaine between the ages of 19 and 25. Because Plaintiff was born in 1988, he was 18 years old in 2006 and 25 years old in 2013. The only documented work occurred in 2006 and 2010 (ECF No. 9 at 154) during Claimant's years of substance abuse.

The ALJ also discussed Claimant's prescription medications and noted side effects or the lack thereof. (E.g. ECF No. 9 at 25 ("He did admit that he stopped taking his Gabapentin medication, as it made him feel tired (6F/66). The claimant's physician changed his medications to better address his symptoms (6F/66)."); ECF No. 9 at 24 ("Pharmaceutical management notes from July 2017 show that the claimant was stable on his Adderall, Celexa and Gabapentin medications and he was not experiencing any symptoms of mania")). After a thorough examination of Claimant's treatment and medications, the ALJ explained

> [t]he above review of the evidence indicates a long period of stability on his suboxone and therapy treatment. He did not report any significant side effects from the mediation and tolerated it well. It is persuasive that the claimant frequently and routinely presented on time or early for his appointments. This indicates he can maintain a work schedule. He frequently and routinely presented with normal speech, oriented and clear thought processes. Although he reported variable symptoms of depression, he denied suicidal or homicidal ideation, plan or intent. This is persuasive that his symptoms are adequately controlled with his treatment and he can adequately function in an unskilled work environment.

(ECF No. 9 at 26).

Elsewhere, the ALJ noted Claimant's daily activities and that he stated he was bored from staying in his room all day playing video games and that his depression was "environmental" due to him being isolated all the time. (ECF No. 9 at 25).

Claimant asserts that the ALJ "failed to consider the fact that his testimony was corroborated by the observations proffered at Signature Health. Observations including depressive symptoms (Tr. 410435 [sic], 449, 456, 470, 484, 498, 520, 527) and the fact that he was often disheveled and unkempt with only fair hygiene (Tr. 361, 384)." (ECF No. 11 at 19). However, as discussed above, the ALJ discussed Claimant's symptoms of depression and found that they are not so severe as to render him disabled. Additionally, the ALJ considered that Claimant had

occasionally appeared disheveled and with fair hygiene. (ECF No. 9 at 21).

The ALJ's decision as a whole satisfies the Court that the ALJ considered all of the relevant evidence and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. There exists, therefore, no compelling reason for the Court to disturb that finding. *Cross,* 373 F. Supp. 2d at 732.

### 3. Step Five

At step five the Commissioner has the burden of proof to show "that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "The step five analysis is meant to determine, given the severity of the impairments *already proven*, whether there are jobs in the economy which a claimant can perform." *Id*. (emphasis added). If a Claimant has not established limitations to be included in an RFC by step four, the burden does not shift to the Commissioner to prove an RFC – or its limitations – at step five. *Id*. at 392.

The Commissioner properly met his burden to determine that there is work available in the economy that the claimant can perform at step five. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation marks and citation omitted). "This substantial evidence may be in the form of vocational expert testimony in response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Baker v. Barnhart*, 182 F. App'x 497, 500 (6th Cir. 2006) (citations and internal quotation marks omitted). The Commissioner met this burden through the testimony of the vocational expert, who testified that work exists in the national economy that accommodates Claimant's RFC and

vocational factors. Therefore, the ALJ found that Claimant is not disabled.

For the first hypothetical, the ALJ proposed that:

> assume an individual who has no exertional limitations. However, as far as mental limitations are concerned, this individual is limited to simple, routine-type work; can interact with others to speak, signal, ask questions and serve; should avoid jobs that require mechanized, fast-paced production demand for time and quantity; should avoid, and even though this is typically something that is given in a physical context, I'm putting in the mental context, should avoid jobs that require the worker to operate dangerous moving equipment such as power saws, jackhammers, no work in unprotected heights, and this is for safety purposes.

(ECF No. 9 at 47). The vocational expert testified that there would be significant jobs available for such an individual, including that of a laundry worker, cleaner, and garment sorter. (ECF No. 9 at 47-48).

For the second hypothetical individual, the ALJ added that the person in hypothetical #1 would be off-task 10% of the day. The vocational expert testified that the jobs mentioned previously would still be available with an off-task percentage of 10% of the day. (ECF No. 9 at 48-49).

The ALJ's third hypothetical question added that the person would come in late one day a month, would leave early another one day a month. (ECF No. 9 at 49). The vocational expert testified that no jobs would exist for such a person as such "individual would be unable to maintain any level of work as they would eventually violate the -- most attendance policies competitive employers have in place." (ECF No. 9 at 49).

Claimant argues that the ALJ erred by not finding that the third hypothetical – which included a limitation that the individual would need to leave early and arrive late – accurately

reflected Claimant's abilities and limitations. (ECF No. 11 at 20).[8] However, the ALJ found that the first hypothetical properly included Claimant's limitations that the ALJ found were supported by the record. Although the ALJ raised with the vocational expert additional limitations pertaining to subsequent hypotheticals – such as leaving early or arriving late, the ALJ concluded that these limitations did not apply to Claimant, which was supported by substantial evidence and within her "zone of choice". The vocational expert testified that approximately 911,000 jobs nationwide exist for someone with Claimant's vocational profile, including the restrictions the ALJ found supported by the record as a whole. (ECF No. 9 at 47-48).

Accordingly, because the hypothetical question accurately portrayed Claimant's individual physical and mental impairments, substantial evidence supports the ALJ's finding that work is available in the economy that the claimant can perform. *Baker*, 182 F. App'x at 500.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Plaintiff's Statement of Errors and AFFIRM the Commissioner's decision.

DATED:  January 28, 2021

      *Carmen E. Henderson*
Carmen E. Henderson
United States Magistrate Judge

---

[8] To the extent that Claimant is attempting to argue that the RFC failed to include this particular limitation, such an argument is not proper at step five. Nonetheless, substantial evidence supports the ALJ's finding that a limitation stating the Claimant would come in late or leave early from work was not necessary. The ALJ explained that Claimant typically arrived early or on time for his appointments and rejected the notion that because Claimant had short-lived employment that this meant he could not work, because he was actively using opioids during that time. (ECF No. 9 at 19, 24).

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas* v. *Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).